REED *v.* PHILLIPS.

4-9254                                        233 S. W. 2d 77

Opinion delivered October 16, 1950.

*Jack Holt,* for appellant.

*Henley & Henley,* for appellee.

LEFLAR, J. Appellee R. T. Phillips was for some time a real estate broker doing business at Jasper in Newton county, Arkansas. On November 3, 1948, his license to engage in that business was revoked by the Real Estate Commission under authority of Ark. Stats., §§ 71-1301 to 71-1311, inclusive, an enactment held valid by this Court in *State* v. *Hurlock,* 185 Ark. 807, 49 S. W. 2d 611. The validity of this revocation is not challenged. The Secretary of the Real Estate Commission brought the present suit under § 71-1311 of the cited statute, alleging that Phillips had continued to act as a real estate broker after hise license was revoked, and praying that he be enjoined from doing so further. Phillips denied engaging in the business after his license was revoked, though admitting that he had bought and sold his own real estate and maintained a small office for that purpose. After a hearing the Chancellor concluded that the preponderance of the evidence failed to sustain the allegations, and denied the injunction. The plaintiff appeals.

The evidence given by the plaintiff was largely that of an undercover agent, James K. Daugherty, who was sent to Jasper by the Secretary of the Commission to secure evidence against Phillips. This Daugherty endeavored to do by misrepresenting himself to Phillips as a prospective farm buyer from St. Louis. He testified that Phillips showed him three or four different places, one of which was apparently owned by Phillips himself. Daugherty stated that he made contracts, through Phillips, to buy two of the places, from owners named J. T. Smith and Allen Lamden, and made a $25.00 down payment to Smith on his place and a $25.00 down payment to Phillips on the Lamden place. Both payments were admittedly made by Daugherty. But Phillips testified that, after showing Daugherty his own place, he took Daugherty to see Smith and Lamden, whose farms were nearby, merely because Daugherty asked him to, and not with any idea of acting as a real estate broker to sell the farms.

As to the transaction with Smith, Daugherty himself testified that "I started to hand it (the $25.00) to Mr. Phillips. He said no, hand it to Mr. Smith; he had nothing to do with that." Daugherty's receipt for the payment was signed by Smith. Other testimony indicated that negotiations were directly between Daugherty and Smith.

Daugherty further testified that, when they returned to town after closing the Smith deal, "I didn't know whether it would hold up in court," so he went back to see Phillips again and gave him $25.00 earnest money on the Lamden place. Phillips gave Daugherty a receipt for this. He did not turn the money over to Lamden. His explanation was that he took the money primarily as a convenience to Daugherty, who said he did not want to make another trip out to Lamden's place, and that the money was not turned over to Lamden because he (Phillips) on second thought feared he might be acting as a real estate agent if he did pay it over. Daugherty of course did not complete either purchase.

The only other testimony as to real estate transactions engaged in by Phillips after his license was revoked related to land apparently owned either by himself or his wife. It was proved that his old real estate sign remained beside his office for some time after the license was revoked, but he explained that he didn't own the sign, that it belonged to the Strout Real Estate Agency, for whom he formerly worked and whose name was on the sign, and that he didn't take it away because it didn't belong to him. The plaintiff also sought to show that Phillips used his real estate business stationery for correspondence after his license was revoked, but the only evidence offered was a letter that had nothing to do with real estate. Phillips' explanation was that he was merely using up old paper in writing personal letters.

The Chancellor made an oral statement from the bench before issuing his formal decree in the case, and in the course of it said "The Court is really inclined to think that perhaps this defendant has held himself out as willing to sell property to others, but the only proof

of that is the special agent that was sent in here and that was flatly denied.'' He then concluded that the evidence actually introduced did not sustain the allegations. Appellant contends now that the two parts of the Chancellor's statement are inconsistent, and that the first words amounted to a finding that defendant was guilty of the acts charged. We do not so interpret the Chancellor's language. He was merely saying that he suspected the defendant might in fact have done the acts, but that the evidence did not show he had, and the decree would have to be based on the evidence. There is no inconsistency in that.

A moment later, at the close of the Court's oral statement, Mr. Holt, attorney for the plaintiff Secretary of the Commission, asked ''If the court please, what harm can be done by granting an injunction if he is not going to violate the law?'' and the Chancellor replied ''Under the law, before I would be warranted in issuing an injunction I must find positively he has violated the law in the past.'' Appellant asserts error in this statement also, on the theory that the Chancellor's use of the word ''positively'' indicated that he was requiring clear and conclusive evidence, rather than merely a preponderance of the evidence, as a condition to granting the civil injunction sought against Phillips.

Here again we do not believe that the record sustains appellant's position. In the decree, formally rendered on the same day as the trial, it was declared that ''the Court doth find that plaintiff has failed to establish by preponderance of the testimony the material allegations of his complaint herein.'' That was the Court's formal action in the case, and the evidential standard employed in it was the proper one. The adverb ''positively'' as it appeared in the earlier statement appears to have been nothing more than a word thrown in for emphasis in the course of the judge's explanatory conversation with Mr. Holt. At any rate it does not rebut the effect of the express language contained in the decree.

On review of the entire record we cannot conclude that the Chancellor's determination of the case is con-

trary to the preponderance of the evidence. The decree is affirmed.

DUNAWAY, J., dissents.

HOLT, J., not participating.